IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 08-cv-00360-LTB-MEH

HARRY SAMUELS,

    Plaintiff,

v.

JOHN E. POTTER, Postmaster General of the United States Postal Service,

    Defendant.
_____

ORDER
_____

This matter is before me on a Motion for Summary Judgment and Supporting Brief [**Doc #22**] filed by Defendant, John E. Potter, the Postmaster General of the United States Postal Service, against Plaintiff, Harry Samuels. Oral arguments would not materially assist me in the determination of this motion. After consideration of the parties' briefs and arguments, I GRANT the motion for the following reasons.

**I. BACKGROUND**

Plaintiff filed this lawsuit seeking damages, declaratory judgment and other relief against Defendant, his employer, for race discrimination in violation of 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") and age discrimination in violation of 29 U.S.C. §§ 621, *et seq.* (the Age Discrimination in Employment Act or "ADEA"). Plaintiff is African American over the age of 40. He is employed by the Defendant as a PS-06 Motor Vehicle Operator. During the course of his employment, beginning in 1999, Plaintiff has filed numerous grievances against Defendant asserting various adverse employment actions.

**1999 - MSPB Action**

Following his termination for threatening a supervisor in 1999, Plaintiff appealed to the Merit Systems Protection Board (MSPB). On May 31, 2000, the MSPB mitigated the penalty to a sixty-day suspension and awarded back-pay. Plaintiff then filed a Petition for Enforcement of the MSPB decision alleging that Defendant had improperly deducted union dues and health insurance premiums from his backpay award. On April 12, 2004, the MSPB Administrative Judge issued a decision finding that the deduction of union dues and health insurance premiums was proper. The decision advised Plaintiff that he could file a petition for review with the full MSPB, or could seek judicial review in the United States Court of Appeals for the Federal Circuit. Plaintiff did not appeal.

**January 2006 - EEO Complaint #1**

On January 11, 2006, Plaintiff filed an informal EEO complaint (# 4E-800-0120-06) in which he alleged that he was told that he could not bid on the Northview tractor trailer route, and that he was not paid enough for working out-of-schedule on Veteran's Day 2004. On March 7, 2006, the parties settled this informal EEO complaint. Plaintiff was paid $850 in full settlement for his claims, which were then withdrawn.

**May 2006 - EEO Complaint #2**

On April 25, 2006, Plaintiff filed an informal EEO complaint of discrimination alleging that on February 19, 2002, his starting time was changed by forty-five minutes. A formal complaint was subsequently filed on May 19, 2006 (#1E-801-0060-06). On August 14, 2006, Defendant issued a Final Agency Decision dismissing the claims as untimely. The decision – which was mailed to Plaintiff's attorney by regular and certified mail on August 14, 2006 – included a notice that Plaintiff could file a case in U.S. District Court within ninety days.

Plaintiff did not file a case within the ninety days.

**October 2006 - EEO Complaint #3**

On October 3, 2006, Plaintiff filed a formal EEO complaint (#1E-801-0078-06) asserting that on June 9, 2006, his acting supervisor, Fred Morin, pushed the back of his shoulder and pointed his finger in his face. He also alleged that on July 18, 2006, his tour supervisor, Karen Kropa, placed him in an Absent Without Official Leave (AWOL) pay status for July 18, 2006, when he was actually on annual leave. Plaintiff alleged that these acts constituted discrimination based on his race, color and age, and retaliation.

**June 2007 - EEO Complaint #4**

On March 12, 2007, Plaintiff filed an informal EEO complaint alleging that from October 2005 through February 20, 2007, he was paid less than Robert Douglas, a level PS-07 Tractor Trailer Operator who was assigned to drive an eleven-ton truck. On June 21, 2007, Plaintiff filed a formal EEO complaint (# 1E-801-0046-07) in which he alleged that Robert Douglas should have been paid the same as he was at level PS-06 – as opposed to PS-07 – and that this pay discrepancy constituted discrimination against Plaintiff based on race, age and retaliation.

Thereafter, on February 21, 2008, Plaintiff filed this lawsuit in which he alleges that he was illegally subject to the following adverse employment actions by Defendant based on his race, age, or in retaliation for filing employment discrimination complaints:

a) failing to pay him all wages and benefits due when he was wrongfully terminated (in the form of unauthorized deductions from his back pay award);

b) failing to pay him all wages and benefits due by making unauthorized deductions from his paycheck for union dues, failing to pay him all wages for "out of schedule" and overtime work;

c) changing his work schedule providing for Sunday and Monday days off, to a work schedule providing for Sunday and Wednesday days off;

d) changing his work schedule start time by 45 minutes;

e) refusing to allow him to bid on a truck driving route;

f) paying a white driver more to drive the same type of truck, even after he prevailed in an Equal Employment Opportunity (EEO) complaint about this issue;

g) issuing unwarranted reprimands, including that he was "absent without leave" from his job;

h) assigning similarly-situated and less qualified white co-workers to perform the same job duties he performs but paying the white co-workers more money;

i) allowing a supervisor to physically threaten him by putting his hands on him and pointing a finger in his face; and

j) "being called a 'nigger' by a supervisor."

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

As an initial matter, Defendant argues that a number of the alleged adverse employment actions cannot be considered when assessing Plaintiff's claim for discrimination on the basis that he failed to exhaust his administrative remedies in order to assert them in this case. Plaintiff concedes that he must exhaust administrative remedies prior to bringing a suit pursuant to Title VII or the Age Discrimination Act, *see Shikles v. Sprint/United Management Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005), and that the Tenth Circuit requires the administrative exhaustion of each individual discriminatory or retaliatory act. *See Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003)(ruling that unexhausted claims involving discrete employment actions are no longer viable). As such, Plaintiff agrees that his claims cannot be based on many

of the alleged discriminatory acts; instead, he maintains that they are relevant as "background evidence" in support of his timely filed claims. *Id.* at 1211.

Plaintiff's allegations that he was not paid for working overtime, his days off were changed from Sundays and Monday to Sundays and Wednesday, and that he was called a derogatory name by a supervisor were not included in any of his EEO complaints and, as a result, Plaintiff has failed to exhaust his administrative remedies as to those specific claims. Likewise, Plaintiff's allegations that he was not paid for "out-of-schedule" work and he was refused the opportunity to bid on a specific driving route are not actionable in that they were withdrawn after the parties settled the underlying EEO complaint. *See generally Johnson v. Ashcroft*, 445 F.Supp.2d 45, 50 (D.D.C. 2006)(ruling that an agreement by the parties dismissing all claims is the equivalent of a decision on the merits and subsequent claims are barred by *res judicata*).

Plaintiff's allegation that his work start time was changed by forty-five (45) minutes is untimely in that it was not raised with an EEO counselor within forty-five days – as required by 29 C.F.R. § 1614.105 – and then a civil action was not filed within ninety days after receipt of the final administrative action on the claim, as required by 42 U.S.C. § 2000e-16(c). In addition, Plaintiff's allegation that expenses were improperly deducted from a back-pay award is also untimely in that the issue was decided by the 2004 MSPB decision, and was not appealed. *See Million v. Frank*, 47 F.3d 385, 389 (10th Cir. 1995)(compliance with the time requirements is a condition precedent to a discrimination suit that functions like a statute of limitations).

As a result, the alleged acts that form the basis for Plaintiff's claims of discrimination in this case are limited to the claims set forth in the June 2006 EEO Complaint #3 – in which Plaintiff asserted that his acting supervisor, Mr. Morin, physically assaulted him in June 2006,

and that his tour supervisor, Ms. Kropa, falsely alleged that he was AWOL on July 18, 2006 – and his claim in his June 2007 EEO Complaint #4 – in which he alleges that he was denied the same salary that was paid to a similarly-situated, less senior, non-black co-worker. Plaintiff also asserts that these discriminatory employment actions occurred in retaliation to his filing EEO complaints.

## III. DISCRIMINATION CLAIM

**AWOL Pay Status**

Defendant first asserts that Plaintiff has failed to establish a *prima facie* claim for race discrimination under Title VII or age discrimination under the ADEA regarding his claim that placing him on AWOL pay status on July 18, 2006 constituted discrimination. I agree.

To establish a *prima facie* case of race or age discrimination, an employee must present evidence that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See Hysten v. Burlington Northern and Santa Fe*, 296 F.3d 1177, 1181-82 (10th Cir. 2002)(modifying the four-part *McDonnell Douglas* test for claims that do not involve hiring or firing); *see also Sanchez v. Denver Public Schools,* 164 F.3d 527, 529 (10th Cir. 1998)(applying analysis to the ADEA).

Defendant asserts that placing Plaintiff on AWOL pay status on July 18, 2006, did not constitute an adverse employment action under the second requirement of a *prima facie* case, because his status was subsequently changed after Plaintiff submitted documentation requesting annual leave. An "adverse employment action" is liberally construed in that they are not simply limited to monetary losses in the form of wages or benefits. *Hillig v. Rumsfeld*, 381 F.3d 1028, 1031 (10th Cir. 2004). Rather, the Tenth Circuit takes "a case-by-case approach, examining the

unique factors relevant to the situation at hand." *Id.* (*quoting Sanchez v. Denver Public Schools*, *supra*, 164 F.3d at 531). Nonetheless, "a mere inconvenience or an alteration of job responsibilities," is not an adverse employment action. *Id.* (*quoting Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986-87 (10th Cir. 1996)). An adverse employment action includes, but is not limited to, "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Piercy v. Maketa,* 480 F.3d 1192, 1203 (10th Cir. 2007)(*quoting Hillig v. Rumsfeld*, *supra*, 381 F.3d at 1032-33).

It is undisputed that Plaintiff did not report for work on July 18, 2006, and, as such, Karen Kropa placed him on AWOL pay status for that day because he did not have approved leave. On August 9, 2006, Ms. Kropa changed Plaintiff's pay status for July 18, 2006 from AWOL to annual leave after being asked to do so by the acting manager of transportation and after Plaintiff submitted documentation requesting annual leave for that date. After Plaintiff's pay status for that date was changed, he was compensated for that day at his normal pay rate. Despite Plaintiff's assertion that Ms. Kropa did not change his status voluntarily and could not recall another employee being placed on AWOL under similar circumstances, I agree that the act of placing Plaintiff on AWOL pay status did not constitute an adverse employment action.

In addition, Defendant asserts that even if the action of placing Plaintiff on AWOL pay status did constitute an adverse employment action – and Plaintiff has met his *prima facie* burden – it has articulated a legitimate, non-discriminatory reason for the employment decision. After an employee has met his burden of establishing a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Timmerman v. U.S. Bank, N.A.,* 483 F.3d 1106, 1113 (10th Cir. 2007)(*citing McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). The employee then has the full burden to show that the employer discriminated on the basis of sex or age. *Id. (citing Bryant v. Farmers Ins. Exch.,* 432 F.3d 1114, 1125 (10th Cir. 2005)).

In support of its claim, Defendant refers me to the Postal Service Employee Labor Relations Manual, Rule 66.5, which states that: "Employees who fail to report for duty on scheduled days, including Saturdays and holidays are considered absent without leave except in cases where actual emergencies prevent them from obtaining permission in advance." Rule 512.4 further provides that: "Except for emergencies, annual leave for all employees except postmasters, must be requested on PS form 3971 and approved in advance by the appropriate supervisor." Plaintiff did not request emergency leave for July 18, 2006. As such, I agree with Defendant that placing Plaintiff on AWOL pay status was required by postal service regulations which, in turn, is clearly a non-discriminatory reason for the action.

If the employer successfully presents a non-discriminatory reason for the action, the burden shifts to the employee to present evidence that the stated reason for the action is a pretext for illegal discrimination. *Timmerman v. U.S. Bank*, *supra*, 483 F.3d at 1113. To establish pretext, an employee must present evidence that the non-discriminatory reason was so inconsistent, implausible, incoherent, or contradictory, that it is unworthy of belief. *Stover v. Martinez,* 382 F.3d 1064, 1071 (10th Cir. 2004). Plaintiff's sole allegation that the fact that his pay was "corrected" after he complained constitutes evidence that discrimination did, in fact, occur, does not rise to the level of establishing pretext sufficient to met his burden.

**Inequitable Pay**

Plaintiff also claims that he was discriminated against because his request to be paid that

same as co-worker – who was similar-situated, less senior, and "non-black" – was denied. Defendant again asserts that even if Plaintiff's claim constituted an adverse employment action, it has articulated a legitimate, non-discriminatory reason for the employment decision. Specifically, Defendant maintains that the co-worker, Robert Douglas, was employed as a PS-07 Tractor Trailer Operator. As established by the Collective Bargaining Agreement, the rate of pay for that position is higher than that of Plaintiff's position, which is as a PS-06 Motor Vehicle Operator. Although PS-07 Tractor Trailer Operators usually drive tractor trailers, Defendant avers that Mr. Douglas was assigned to drive an eleven-ton truck as an accommodation for medical restrictions.

Plaintiff responds that this reason is "disputed by the common sense explanation" that "[g]iven my years of experience working as a truck driver, I know there is no difference, in the skill or energy or physical capacity required, to drive an 11-ton truck and a tractor trailer . . . [i]f you have some physical ailment preventing you from driving a tractor trailer, this same ailment would prevent you from driving an 11-ton truck."

Again, even if the pay differential between Plaintiff and another employee constituted an adverse employment action in this case, Defendant has clearly articulated a legitimate, non-discriminatory reason for the employment decision; namely, Defendant's need to accommodate the other employee's medical restrictions. In addition, Plaintiff has not met his burden to present competent evidence that the stated reason for the action is a pretext for illegal discrimination. His unsupported and self-serving assertion that it is common sense and his experience that any physical ailment preventing an employee from driving a tractor trailer would likewise prevent an employee from driving an 11-ton truck, does not show that the non-discriminatory reason provided by Defendant was so inconsistent, implausible, incoherent, or contradictory, that it is unworthy of belief sufficient to survive summary judgment. *See generally Randle v. City of*

*Aurora,* 69 F.3d 441, 452 (10th Cir. 1995)(ruling that demonstrating pretext enables a plaintiff to survive summary judgment).

**Supervisor Assault**

The remaining adverse employment action alleged by Plaintiff is his claim that in June of 2006, his acting supervisor, Mr. Morin, physically assaulted him. This incident is disputed by Defendant, but is assumed to have occurred as alleged for the purposes of this motion.

Plaintiff does not sufficiently assert, however, that the alleged assault was an adverse employment action that occurred under circumstances giving rise to an inference of discrimination. Plaintiff alleges that on June 9, 2006, Mr. Morin "physically assaulted me by pushing me on the back of my shoulder and pointing his finger in my face" in violation of Defendant's workplace violence rules. Plaintiff also avers that Mr. Morin should have been re-assigned pending an investigation, in accordance with Defendant's policies, but he was not. He does not assert, however, that the physical altercation occurred in the context of discriminatory animus based on his race or his age. Nor does Plaintiff assert a claim of hostile work environment. As such, Plaintiff's claim of the discrete altercation alleged, even if true, does not constitute an adverse employment action that occurred under circumstances giving rise to an inference of discrimination and, therefore, he has failed to establish his *prima facie* case. *See O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 311-12, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) ("[a]s the very name '*prima facie* case' suggests, there must be at least a logical connection between each element of the *prima facie* case and the illegal discrimination for which it establishes a legally mandatory, rebuttable presumption")(citation and quotations omitted).

Therefore, because none of the adverse employment actions alleged by Plaintiff can

support his claim for discrimination, summary judgment is appropriate in favor of Defendant on Plaintiff's claims of race discrimination in violation of Title VII and age discrimination in violation of the ADEA.

## IV. RETALIATION CLAIM

Plaintiff also asserts a claim of discriminatory retaliation under both Title VII and the ADEA. Title VII forbids retaliation against an employee because he has "opposed" any practice made unlawful by Title VII, or because he has "participated . . . in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The ADEA likewise prohibits discriminating against an employee who "has opposed any practice made unlawful" by the statute. 29 U.S.C. § 623(d).

"To establish a *prima facie* case of retaliation, [an employer] must demonstrate (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross & Blue Shield of Kan., Inc.,* 452 F.3d 1193, 1202 (10th Cir. 2006)(*citing Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 66, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)); *see also Hinds v. Sprint/United Management Co.,* 523 F.3d 1187, 1202 (10th Cir. 2008)(applying to ADEA retaliation claim).

An employer's adverse employment action must be real and significant. *Jencks v. Modern Woodmen of America,* 479 F.3d 1261, 1264 -1265 (10th Cir. 2007). "The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id.* (*quoting Burlington N. v. White*, *supra*, 126 S.Ct. at 2414). Thus, a retaliation claim is applicable to only those employer actions that would have been materially

adverse to a reasonable employee; in other words, an act that well might dissuade a reasonable worker from making a discrimination complaint. *Id.* (*quoting Burlington N. v. White*, *supra*, 126 S.Ct. at 2409).

Plaintiff's allegations of retaliation – even when viewed in the aggregate – do not meet the second requirement of a *prima facie* case that a reasonable employee would have found the challenged action materially adverse. Specifically, the actions alleged by Plaintiff do not rise to the level of serving to dissuade a reasonable employee from making claims of discrimination. As stated in *Somoza v. University of Denver,* 513 F.3d 1206, 1214 (10th Cir. 2008), "it is clear from the record that [the plaintiff was] *not* dissuaded by the alleged material and adverse retaliatory conduct . . . [in that he] did not cease attempting to remedy what [he] perceived to be acts of discrimination."

ACCORDINGLY, for the reasons stated above, the Motion for Summary Judgment and Supporting Brief [**Doc #22**] filed by Defendant, John E. Potter, the Postmaster General of the United States Postal Service, is GRANTED; the Amended Complaint filed by Plaintiff, Harry Samuels, is DISMISSED WITH PREJUDICE; and Defendant is AWARDED its costs.

Dated: March   18th  , 2009, in Denver, Colorado.

BY THE COURT:


   s/Lewis T. Babcock
LEWIS T. BABCOCK,  JUDGE